UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No.: 2:92-cr-82-KOB-JHE |
| | ) | |
| **RALPH W. THOMAS** | ) | |

### TIME SENSITIVE MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

Ralph Thomas, through undersigned counsel, respectfully moves this Court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A). Section 3582(c) provides that a sentencing court can reduce a sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). As detailed below, Mr. Thomas's situation is extraordinary and compelling:

(1) Mr. Thomas is an 87-year old man serving a sentence of 71 years and 6 months for four armed bank robberies. (Doc. 53 at 1). The bulk of the sentence resulted from four counts of violating 18 U.S.C. § 924(c). At the time of his conviction, he faced a mandatory minimum sentence of 5 years for the first § 924(c) conviction, and a consecutive 20-year sentence for each of the remaining three § 924(c) counts. *See* 18 U.S.C. § 924(c) (1992). The First Step Act of 2018 amended the penalties for second 18 U.S.C. § 924(c) offenses such that Mr. Thomas's sentence could be 45 years shorter today. He would have faced a sentence of approximately 26.5 years—less than the 28 he has already served.

(2) While incarcerated, Mr. Thomas has completed his G.E.D. He had three disciplinary infractions in the first five and a half years of his sentence, but has not committed any infractions since December 24, 1997. (Exh. C)

(3) Mr. Thomas is combating debilitating and chronic health issues at the Federal Medical Center in Springfield, Missouri, including: hypothyroidism, type 2 diabetes, hypertension, tachychardia, diastolic heart failure, coronary artery disease, stage 4 chronic kidney disease, retinal disorder, peripheral vascular disease, and glaucoma. (Exhs. A and G[1]).

(4) In 2019, the Clinical Director at USP Terre Haute examined Mr. Thomas following Mr. Thomas's *pro se* request for compassionate release based on debilitated medical condition. (Exh. A). The Director opined that Mr. Thomas had "an incurable, progressive illness or debilitating injury from which he would not recover." *Id*. He further opined that Mr. Thomas's medical conditions substantially diminished his ability to function in a correctional facility. *Id*. The Warden of that facility recognized that Mr. Thomas likely met the medical criteria for release, but he ultimately denied Mr. Thomas's request based on a lack of an adequate release plan. (Exh. B).

(5) In 2019, the Bureau of Prisons moved Mr. Thomas from USP Terra Haute to MCFP Springfield. This Court appointed counsel on January 30, 2020 after Mr. Thomas wrote to the Court seeking compassionate release. (Doc. 62).

---

[1] Exhibit G will be filed under seal.

(6) Since that time, COVID-19 has spread throughout the country and poses additional health concerns for Mr. Thomas. Based on guidance from the Centers for Disease Control and Prevention (CDC), his age and medical conditions significantly increase his risk of severe illness or death if he contracts COVID-19.[2]

(7) Mr. Thomas, through counsel, submitted a request for Compassionate Release/Reduction in Sentence to MCFP Springfield on June 22, 2020, which the Warden denied on July 8, 2020. (Exh. D.). The Warden noted that, while Mr. Thomas may meet the requisite medical criteria, he lacked an adequate release plan.

(8) Through counsel, Mr. Thomas has developed a release plan that includes living at a facility in Birmingham, Alabama, and applying for benefits through the Department of Veterans Affairs (VA) and the Social Security Administration. The U.S. Probation Office has informed counsel and the Bureau of Prisons that the proposed facility is a suitable release location for Mr. Thomas.

(9) On September 18, 2020, Mr. Thomas's counsel submitted to Mr. Thomas's Unit Manager at MCFP Springfield a revised request with the alternate release plan referenced above in paragraph eight. (Exh. E). Three days later, on September 21, 2020, counsel received an email confirming that the

---

[2] Centers for Disease Control, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

request had been submitted to the Warden. Counsel did not receive a further response. Upon emailing the Unit Manager after 30 days had passed from the submission, counsel was informed that the September 21, 2020, had not been submitted to the Warden by the Unit Manager despite her confirmation of submission and that Mr. Thomas would have to attempt to resubmit it again or file a motion for Compassionate Release with the Court. Because of the time-sensitive nature of the request and the BOP's failure to respond to the September 21, 2020, submission, counsel proceeds with this motion.

(10) As of this filing, the Bureau of Prisons is reporting that 170 inmates and 24 staff members at Mr. Thomas's facility have active COVID-19 cases. *See* https://www.bop.gov/coronavirus/ (November 4, 2020).

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Underlying case.

In 1991 and 1992, Mr. Thomas committed a string of four armed bank robberies over the course of five months. (PSR ¶ 7-10). Mr. Thomas was arrested without incident and led agents to the gun that he used. (*Id.* ¶ 12). He pleaded guilty to four counts of armed bank robbery, in violation of 18 U.S.C. § 2213(a) and (d), and four counts of using or carrying a firearm during and in relation to a crime of violence, under 18 U.S.C. § 924(c). He received a total sentence of 858 months—78 months for the robberies themselves, and 780 months for the combined § 924(c) counts. Prior to these offenses, Mr. Thomas had not committed any prior offenses. (PSR ¶¶ 36-37). He had also served two years in the Navy. (*Id.* ¶ 50).

### B. Mr. Thomas's health issues.

Mr. Thomas is now 87 years' old and suffers from several chronic health conditions. These include: hypothyroidism, type 2 diabetes, hyperparathyroidism, hyperlipidemia, glaucoma, hypertension, coronary atherosclerosis, tachychardia, diastolic heart failure, coronary artery disease, stage 4 chronic kidney disease, and retinal disorder. (Exh. A). He also has a pacemaker. The clinical director at USP Terre Haute determined that Mr. Thomas suffered from an incurable progressive illness and that his medical conditions substantially diminish his ability to function within a correctional facility. Mr. Thomas is ambulatory, but the clinical director noted that Mr. Thomas needed a wheelchair pusher to go longer distances. Moreover, Mr. Thomas was, at best, capable of only limited self-care. And as Mr. Thomas explained in his letter to this Court, he suffers from impaired vision. (Doc. 62 at 1-2).

### C. COVID-19 with chronic health conditions.

On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic. As of November 2, 2020, COVID-19 has infected more than 46 million people worldwide, leading to at least 1.2 million deaths. In the United States, approximately 9.33 million people have been infected, leading to at least 231,000 deaths. These numbers almost certainly underrepresent the true scope of the crisis; test kits in the United States have been inadequate to meet demand.

In a March 26, 2020, memorandum to the Bureau of Prisons (BOP), Attorney General Barr wrote that the COVID-19 pandemic creates an emergency that

warrants an expanded use of home confinement. (Ex. D). As of November 3, 2020, there were 1,940 federal inmates and 929 BOP staff with confirmed positive test results for COVID-19 nationwide with 16,285 inmates and 1,396 staff who have recovered.³ Additionally, there have been 130 federal inmate deaths and 2 BOP staff member death attributed to COVID-19.⁴

People, like Mr. Thomas, who are elderly and suffer from chronic health conditions are at higher risk of severe illness from COVID-19.⁵ According to the CDC, the risk for severe illness increases with age. Indeed, compared to an 18-29 year old, a person who is older than 85 is 13 times more likely to be hospitalized and 630 times more likely to die from COVID-19.⁶

The CDC has identified the population most at risk of death from the disease to include adults with chronic kidney disease, heart conditions like coronary artery disease, and type 2 diabetes.⁷ Mr. Thomas suffers from each of these conditions. (Exh. A). For these individuals, the CDC warned to take immediate preventative actions, including avoiding crowded areas, socially distancing, and avoid others with the virus. *Id.* This is nearly impossible within the Bureau of Prisons as the bureau has

---

³ *https://www.bop.gov/coronavirus/*
⁴ *Id.*
⁵ Centers for Disease Control, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.
⁶ "Hospitalization and Death by Age," Centers for Disease Control, (August 8, 2020), available at http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html
⁷ "People At Risk for Serious Illness from COVID-19," CDC (March 12, 2020), available at https://bit.y/2vgUt1P.

only been testing inmates in showing acute symptoms that require hospitalization.[8] As a result of the challenges of containing COVID-19 in prisons and the increased danger of severe illness for at-risk inmates, district courts around the country have granted compassionate relief for elderly inmates[9] and inmates with health conditions

---

[8] The BOP has admitted that it is not even testing all symptomatic individuals at all of its facilities, as "only those ill enough to be taken to a hospital are tested for the coronavirus." See Kimberly Kindy, "Inside the deadliest federal prison, the seeping coronavirus creates fear and danger," THE WASHINGTON POST (Apr. 10, 2020), https://www.washingtonpost.com/national/inside-the-deadliest-federal-prison-the-seeping-coronavirus-creates-fear-and-danger/2020/04/09/deeceb6e-75b4-11ea-a9bd-9f8b593300d0_story.html (last visited Apr. 24, 2020).

[9] *United States v. Williams*, No. 15-20462, 2020 WL 4040706 (E.D. Mich. July 17, 2020) (granting compassionate release to a 68-year-old and placing him on a six-month period of home detention); *United States v. Carter*, No. 16-cr-156 (TSC), ECF No. 48 (D.D.C. June 10, 2020) (granting compassionate release to a 76-year-old defendant who "has no other documented health issues"); *United States v. Regas*, No. 391-cr-00057, 2020 WL 2926457 (D. Nev. June 3, 2020) (granting compassionate release to a 77-year-old incarcerated at a facility with no confirmed Covid-19 cases).

like those Mr. Thomas suffers from.[10] Indeed, diabetes is a very common factor cited in granting relief.[11] As is hypertension.[12]

---

[10] *See e.g, United States v. Locke*, No. CR18-0132 (RAJ) (W.D. Wash. June 11, 2020) (granting compassionate release for inmate suffering from chronic kidney disease, along with other chronic health conditions); *United States v. Saad*, Case No. 16-20197, 2020 WL 2251808 (E.D. Mich. May 5, 2020) (granting compassionate release for inmate suffering from kidney disease and other chronic conditions); *Miller v. United States*, 453 F.Supp.3d 1062, 1064 (E.D. Mich. 2020) (granting compassionate release for inmate with a history of coronary artery disease and other chronic health conditions).

[11] *United States v. Mattingly*, 6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez*, 1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Barber*, 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Rivernider*, 3:10-cr-00222-RNC, 2020 WL 2393959 (D. Conn. May 12, 2020); *United States v. Hunt*, 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Ramirez*, 1:17-cr-10328-WGY, 2020 WL 2402858 (D. Mass. May 12, 2020); *United States v. Al-Jumail*, 2:12-cr-20272-DPH-LJM-3, 2020 WL 2395224 (E.D. Mich. May 12, 2020); *United States v. Simpson*, 3:11-cr-00832-SI-3, 2020 WL 2323055 (N.D. Cal. May 11, 2020); *United States v. Reddy*, 2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Connell*, 18-cr-00281-RS-1, 2020 WL 2315858 (N.D. Cal. May 8, 2020); *United States v. Amarrah*, 5:17-cr-20464-JEL-EAS-1, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Quintero*, 6:08-cr-06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Howard*, 4:15-cr-00018-BR-2, 2020 WL 2200855 (E.D. N.C. May 6, 2020); *United States v. Pabon*, 2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020); *United States v. Lacy*, 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Pinkerton*, 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill. Apr. 30, 2020); *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); *United States v. Sanchez*, 1:95-cr-00421-MGC-1, Dkt. No. 290 (S.D. Fla. Apr. 27, 2020); *United States v. Dillard*, 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020); *United States v. Coles*, 2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020); *United States v. Suarez*, 1:18-cr-20175-MGC-1, Dkt. No. 180 (S.D. Fla. Apr. 20, 2020); *United States v. Ben-Yhwh*, CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Winckler*, 2:13-cr-00318-CB-1, 2020 WL 1666652 (W.D. Penn. Apr. 3, 2020); *United States v. Colvin*, 3:19-cr-00179-JBA-1, 2020 WL 1613943 (D. Conn. Apr. 2, 2020).

[12] *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); *United States v. Ullings*, 1:10-cr-00406-MLB-1, 2020 WL 2394096 (N.D. Ga. May 12, 2020); *United States v. Valencia*, 1:15-cr-00163-AT-1, 2020 WL 2319323 (S.D. N.Y. May 11, 2020); *United States v. Foreman*, 3:19-cr-00062-VAB-1, 2020 WL

COVID-19 is spreading at high volumes through the prisons.[13] In FCI Lompoc, 904 inmates of the 949 total inmate population either had the virus or are currently fighting it.[14] Other facilities across the country have seen similar trends, as prisons have especially struggled to fully prevent the rapid spread in low security prisons where inmates sleep head to head. Even in the best of times, prisons and jails have "long been known to be associated with high transmission probabilities of infectious diseases."[15] Incarcerated individuals "are at special risk of infection" due to close proximity to one another and "infection control is challenging."[16] To make matters worse, preliminary research shows that rapid dissemination has occurred through

---

2315908 (D. Conn. May 11, 2020); *United States v. Reddy*, 2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Pena*, 1:15-cr-00551-AJN-1, 2020 WL 2301199 (S.D. N.Y. May 8, 2020); *United States v. Connell*, 18-cr-00281-RS-1, 2020 WL 2315858 (N.D. Cal. May 8, 2020); *United States v. Vo*, 15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020); *United States v. Quintero*, 6:08-cr-06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020).

[13] https://www.bop.gov/coronavirus/index.jsp, Forrest City Low FCI, Elkton FCI, Lexington FMC, Oakdale I FCI, Fort Worth FMC, Lompoc FCI, Terminal Island FCI,

[14] From BOP Covid-19 Index and FCI Lompoc information on BOP locations page. Added inmates currently positive, with inmate deaths and inmates recovered.

[15] Letter from Patricia Davidson, Dean, Johns Hopkins School of Nursing, et al., to Hon. Larry Hogan, Governor of Maryland (Mar. 25, 2020), https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-onCOVID-19-jails-and-prisons.pdf (co-signed by over 200 faculty members of Johns Hopkins Bloomberg School of Public Heath, School of Nursing, and School of Medicine) ("Johns Hopkins Letter").

[16] Open Letter from Gregg S. Gonsalves, Assistant Professor, Department of Epidemiology of Microbial Diseases, Yale School of Public Health, *et al.* to Vice President Mike Pence and Other Federal, State and Local Leaders 4 (Mar. 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid19_letter_from_public_health_and_legal_experts.pdf (co-signed by 814 experts in public health, law and human rights); see also Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases 1047-155 (2007), https://doi.org/10.1086/521910.

asymptomatic carriers of the virus.[17] Rapid spreading of the disease is occurring at MCFP Springfield. Indeed, the cases at MCFP Springfield increased from 2 on October 13, 2020 to 128 on October 27.[18] On October 28, the facility reported only 103 cases, based on the recovery of 53 inmates.[19] But by November 4, 2020, the number of active cases again grew to 170.[20]

### D. Request for Compassionate Release from the Warden of MCFP Springfield.

As referenced at the beginning, Mr. Thomas sent his reduction-in-sentence and compassionate release request to his BOP facility on June 22, 2020, with the warden denying the request July 8, 2020. (Ex. C). And he resubmitted the request on September 21, 2020. Because more than 30 days have elapsed since Mr. Thomas's request without a decision by the Bureau of Prisons, he is entitled to bring this motion directly to the Court pursuant to 18 U.S.C. § 3581(c)(1)(A).

---

[17] *See* Ruiyun Li *et al.*, *Substantial undocumented infection facilitates the rapid dissemination of novel coronavirus (SARS-CoV2)*, Science (Mar. 16, 2020), https://doi.org/10.1126/science.abb3221 (86% of Chinese cases before January 23 were undocumented, and undocumented cases were the infection source for 79% of documented cases); Zhanwei Du *et al.*, *Serial Interval of COVID-19 among Publicly Reported Confirmed Cases*, 26 Emerging Infectious Diseases (Mar. 19, 2020), https://doi.org/10.3201/eid2606.200357 (as of February 8, 12.6% of reported infections in China were caused by pre-symptomatic transmission).
[18] Facility-Level BOP Case Trends Dashboard, U.S. Dep't of Justice Office of the Inspector General, https://www.arcgis.com/apps/MapSeries/index.html?appid=a3e98be1aab94eadaaeaa96ed176f418 (last accessed November 2, 2020).
[19] *Id.*
[20] *Id.*

10

## II.  LEGAL AUTHORITY

A defendant's request for compassionate release under § 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" requires a court to consider:

> (1) whether he has exhausted his administrative remedies; (2) if he has exhausted his administrative remedies, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; (3) if a warranted reduction exists, whether such a reduction is consistent with applicable policy statements of the Sentencing Commission; and (4) if so, what sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

*Redd,* 2020 WL 1248493, at *4. As referenced above in Section I.E, Mr. Thomas exhausted his administrative remedy by applying first with the Bureau of Prisons and waiting more than 30 days for its response before filing this motion. Below he addresses the remaining considerations.

### A.  Extraordinary and compelling reasons warrant compassionate release.

With the changes made to the compassionate release statute by the First Step Act of 2018, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." Application Note 1 to U.S.S.G. § 1B1.13 provides several examples of what constitute "extraordinary and compelling" circumstance warranting release, and they include medical conditions such as those suffered by Mr. Thomas. Additionally, courts in the Northern District of Alabama and throughout the country have granted compassionate release during the COVID-19 pandemic for individuals, like Mr.

Thomas, suffering from chronic health conditions. Both of these grounds, and below the history of § 3582 demonstrates that these grounds qualify as "extraordinary and compelling" such that this court may reduce his sentence in this exceptional case.

Section 603 of the First Step Act of 2018 changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP. Here, Mr. Thomas respectfully submits that the totality of circumstances outlined at the beginning of the motion are extraordinary and compelling reasons for a sentence reduction: Mr. Thomas suffers from debilitating health conditions, these conditions greatly increase his risk of COVID-19 complications and his BOP facility is currently in the midst of an outbreak, and Congress has enacted a sea change in the punishment for a second offense under 18 U.S.C. § 924(c).

### B. Compassionate release is consistent with the policy statements of the Sentencing Commission.

Assuming that the policy statements set out in U.S.S.G. § 1B1.13, Application Note 1 apply to post-First Step Act compassionate release requests, extraordinary

and compelling circumstances warrant Mr. Thomas's release. [21] When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18"). The resulting policy statement by the Commission sets forth the following factual considerations: (i) the medical condition of the defendant; (ii) the age of the defendant; (iii) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13, App. Note 1(A).

### 1. Mr. Thomas meets the criteria set out in U.S.S.G. § 1B1.13, Application Note 1(B).

The Guidelines provide that an extraordinary and compelling reason exists where a defendant: (i) is at least 65 years old; (ii) is experiencing a serious

---

[21] The majority of courts to address this issue have determined that a district court is not bound by the confines of the Guidelines commentary. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020) ("A majority [of district courts throughout the country] has concluded that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."). This is because the policy statement was last amended before the passage of the First Step Act, and refers only to motions for compassionate release filed by the BOP, thus it is clearly outdated. *Id.* at 236. Nonetheless, this Court need not address that issue, as Mr. Thomas satisfies the requirements set out in Application Note 1.

13

deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(1)(B). Mr. Thomas is currently 87 years' old, well past the age requirement. He is experiencing a serious deterioration of his physical health due to the aging process, as evidenced by the myriad of health conditions which he currently suffers from. Mr. Thomas has also experienced a decrease in his vision. And finally, Mr. Thomas has served more than 10 years of his sentence. Indeed, he has been incarcerated more than 28 years.

> **2. Moreover, COVID-19 elevates Mr. Mr. Thomas's medical condition to a serious condition and impairment that meets criteria of U.S.S.G. § 1B1.13, Application Note 1(A)(i).**

Mr. Thomas's medical conditions further constitute extraordinary and compelling reason warranting relief when combined with the COVID-19 pandemic. It cannot be disputed that Mr. Thomas's medical conditions place him at an increased risk of severe illness or death. In litigation throughout the country, the Government has conceded that a prisoner can show "extraordinary and compelling circumstances" under § 3582(c)(1)(A)(i) if they suffer from a CDC-identified medical condition that increases the risk of severe illness or death if infected with COVID-19.[22] As outlined

---

[22] In June filing to the Supreme Court, the Solicitor General stated: "The Department of Justice has taken the position in litigation that, under present circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor from COVID-19, and from which the inmate is not expected to recover, *presents an 'extraordinary and compelling reason[]' that may warrant compassionate release if other criteria are also met*." Reply in Supp. Of Application for Stay, *Williams v. Wilson*, No. 19A1047, at 18 n.4 (June 4, 2020) (emphasis added).

14

above, Mr. Thomas suffers from multiple medical conditions that increase that risk. Additionally, his age increases his risk of severe illness.

And recent experience shows that, despite its efforts, BOP cannot prevent or contain outbreaks occurring within its facilities. Even in medical facilities, where efforts to limit the spread of disease should be easiest to implement, the BOP has suffered multiple fatal outbreaks with hundreds of infected inmates. At Carswell FMC, 523 inmates have tested positive and 6 have died. At Lexington FMC, 214 inmates have tested positive and 9 have died. At Fort Worth FMC in Texas, 613 inmates have tested positive and 12 have died. FMCP Springfield is no different. As explained above, FCMP Springfield is currently in the middle of a rapidly spreading mass outbreak, reporting 162 active cases among inmates and 25 active cases among staff.

### C. Compassionate release is warranted after considering the application 18 U.S.C. § 3553(a) factors.

After establishing that a defendant has "extraordinary and compelling reasons" for sentence reduction or early release, the court turns its analysis to the personal and community safety factors listed in 18 U.S.C. § 3533(a). Consideration of these factors demonstrates that a sentence of more than 28 years—the time Mr. Thomas has already served—is sufficient, but not greater than necessary. At the time he committed the instant offenses, Mr. Thomas had no prior criminal history. (PSR ¶¶ 36-37). And any concerns about Mr. Thomas posing a danger to the community or being at a real risk of recidivism are significantly undercut by his age and health issues. A recent Sentencing Commission study found that "older offenders are

15

substantially less likely to recidivate following release compared to younger cohorts," with "13.4 percent of offenders age 65 or older at the time of release [being] rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release." U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3, 30 (Dec. 2017); *see also United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009) (defendant's age is a "relevant factor[]" a court may consider at sentencing). Moreover, Mr. Thomas has not faced disciplinary action through the BOP since 1997—nearly 23 years ago.

A sentence of time served also still severely punishes Mr. Thomas for his offenses while adequately reflecting their seriousness and the directives of Congress as to the appropriate sentences for 18 U.S.C. § 924(c) offenses. On December 21, 2018, § 403 of the First Step Act amended 18 U.S.C. § 924(c)(1)(C) to apply only after a "prior conviction under this subsection has become final." Pub. L. No. 115-391, § 403(a); *see also United States v. Davis*, ⎯⎯ U.S. ⎯⎯, 139 S. Ct. 2319, 2324 n.1 (2019) (stating that "[i]n 2018, Congress changed the law so that, going forward, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum"). Previously, § 924(c)(1)(C) "applie[d] even if the second or subsequent conviction [was] for a count charged in the same indictment as the initial violation of Section 924(c)." *United States v. Walker*, 473 F.3d 71, 75 n.1 (3d Cir. 2007) (citing *Deal v. United States*, 508 U.S. 129, 131-34 (1993)). As a practical matter, an offender now faces a mandatory five-year consecutive sentence, rather than a consecutive 25-year sentence, for a second or subsequent § 924(c)

16

conviction when multiple § 924(c) offenses are charged in the same indictment without a previous final § 924(c) conviction.

While Congress did not make § 403(a) of the First Step Act of 2018 automatically retroactive, the First Step Act of 2018 did expand the methods for defendants to apply for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Thus, it is relevant to this Court's analysis of the § 3553(a) factors. [23]

If Mr. Thomas were sentenced applying § 403(a), he would not be subject to a 20-year mandatory minimum sentence for the three subsequent § 924(c) offense. His mandatory minimum sentences for the second, third, and fourth § 924(c) offense drops from 720 months to 180 months: a difference of 45 years. *See* § 403(a), 132 Stat. at 5221–22. And combined with his underlying bank robbery sentence of 78 months,

---

[23] Indeed, some courts have even recognized the anti-stacking provision to constitute an extraordinary and compelling reason warranting release. *See, e.g, United States v. Arey*, 461 F.Supp.3d 343, 350 (W.D. Va. May 13, 2020) ("The fact that if Arey were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)."); *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. Apr. 6, 2020) ("The fact that Decator, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A)(i)"); *United States v. Redd*, 444 F. Supp. 3d 717, 724 (E.D. Va. Mar. 16, 2020) (Changes to § 924(c) are "extraordinary and compelling developments that constitute extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration"); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020) ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)"); *United States v. Haynes*, 456 F. Supp. 3d 496, 508 (E.D.N.Y. Apr. 22, 2020) (finding "that the FSA's elimination of the § 924(c) sentencing weaponry that prosecutors employed to require [a "stacked" § 924(c) sentence] is an extraordinary and compelling circumstance warranting relief under § 3582(c)").

Mr. Thomas would face approximately 26.5 years in prison—less than the 28 years he has already served. Thus, a sentence of time served is consistent with the amended penalties of the First Step Act of 2018 and lessens the sentencing disparities between those with two offenses under 18 U.S.C. § 924(c) sentenced before and after passage of § 403 of the First Step Act of 2018, as well as those whose sentences have already been reduced by other courts throughout the country.

### III.     CONCLUSION

For all these reasons, Mr. Thomas respectfully moves this Court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Respectfully submitted,

KEVIN L. BUTLER
Federal Public Defender

/s/Allison Case
Assistant Federal Public Defender
Federal Public Defenders
Northern District of Alabama
505 20th Street North, Suite 1425
Birmingham, AL 35203
205-208-7170
allison_case@fd.org

/s/Alexandria Darby
Research and Writing Attorney
Office of the Federal Public Defender
Northern District of Alabama
200 Clinton Ave. West, Suite 503
Huntsville, AL 35801
256-684-8700
Alex_Darby@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties.

/s/ Alexandria Darby